UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PEDRO MORALES-VARGAS,

    Petitioner,

v.

ERIN REYES, Superintendent, Two Rivers Correctional Institution,

    Respondent.
_____

Case No. 2:22-cv-01748-MC

**OPINION AND ORDER**

MCSHANE, Chief Judge.

    Petitioner files this federal habeas action under 28 U.S.C. § 2254 and challenges his Oregon convictions for rape and sexual abuse on grounds that he received ineffective assistance of counsel during trial. Respondent argues that Petitioner's claims are barred from federal review or were denied in a state court decision entitled to deference. I agree that Petitioner fails to show entitlement to habeas relief, and the Petition is DENIED.

1 **- OPINION AND ORDER**

BACKGROUND

Petitioner was charged with Rape in the First Degree, two counts of Sexual Abuse in the First Degree, and one count of Unlawful Sexual Penetration in the First Degree. Resp't Ex. 102. The charges arose from Petitioner's alleged abuse of SM, his seven-year-old daughter.

Petitioner waived his right to jury trial and proceeded to trial before the court. Resp't Ex. 126. Witnesses at trial included SM, her older brother, PM, law enforcement officers, DNA analysts, and a physician who examined SM at CARES Northwest, a child abuse assessment center. *See generally* Resp't Ex. 103 (transcript of proceedings).

According to the evidence presented at trial, Petitioner and his wife lived in a two-story residence with their children, SM and PM. One evening, PM walked downstairs and saw Petitioner and SM in the living room, both partially unclothed with their pants pulled down. Resp't Ex. 103 at 107, 205. SM ran into a closet and Petitioner told PM to go back upstairs. Later, PM asked SM if Petitioner had done "something" to her and, after initially responding "no," SM eventually told PM that Petitioner had been "touching" her. Resp't Ex. 103 at 206. PM testified that he could not remember what else SM had told him that night. *Id.*

The next morning, PM told his mother that he had seen Petitioner and SM with their pants down and that Petitioner "had done something bad to his little sister." Resp't Ex. 103 at 222. After being questioned by her mother, SM said that Petitioner "had done something wrong to her colita," referring to her vaginal area. *Id.*; *see also* Resp't Ex. 103 at 121, 178, 182. SM's mother confronted Petitioner and called the police after Petitioner left their home. Resp't Ex. 103 at 202-204, 218. Detectives King and Smith arrived and interviewed PM, who used the word "violar" to explain that SM had been "touched in a bad way"; violar is a Spanish word that means "rape" in English. Resp't Ex. 103 at 113, 131, 152, 155.

2 - OPINION AND ORDER

The detectives asked SM's mother to call Petitioner, and Petitioner told her to call the police and take SM to the doctor. Resp't Ex. 103 at 121, 140. SM's mother also gave police officers the underwear Petitioner had worn the night before and SM's clothing. Resp't Ex. 103 at 104, 305. Officers transported SM to CARES for an interview and evaluation, and SM disclosed that Petitioner had "poked" her vaginal area with his hand and with his penis. Resp't Ex. 103 at 271, 274-75. A physician at CARES collected forensic evidence by taking swabs from SM's genital areas and obtaining her underwear. Resp't Ex. 103 at 117, 173.

Approximately six months later, Petitioner contacted SM's mother and said he wanted to meet her. Police officers arrested Petitioner at that meeting and later obtained a DNA sample from him. Resp't Ex. 103 at 142-44. Upon testing, analysts found DNA evidence of Petitioner's sperm on SM's outer genitalia, perineal area, and the "interior crotch panel" of her underwear and detected SM's DNA and Petitioner's sperm on Petitioner's underwear. Resp't Ex. 103 at 303-05, 316, 318, 334-42.

The trial court found Petitioner guilty of Rape in the First Degree and the two counts of Sexual Abuse in the First Degree. Resp't Ex. 103 at 423. The Court found the following evidence "significant" in finding Petitioner guilty: PM's observation of Petitioner and SM "with their pants down"; Petitioner's instruction to take SM to the doctor; Petitioner's flight after the incident; SM's statements during her CARES interview; the presence of Petitioner's sperm on SM's genital areas and underwear and the presence of SM's DNA on Petitioner's underwear. Resp't Ex. 103 at 420-22.

At sentencing, the trial court imposed the mandatory sentence of 300 months' imprisonment on the rape count and concurrent 75-month sentences on the sexual abuse counts. Resp't Ex. 101; Resp't Ex. 103 at 437.

3 - OPINION AND ORDER

After an unsuccessful direct appeal, Petitioner sought post-conviction relief (PCR) in state court, arguing that counsel provided ineffective assistance in numerous respects and that cumulative error rendered his trial unfair. Resp't Exs. 109-10. The PCR court denied relief, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 133, 138-39.

Petitioner now seeks federal habeas relief.

## DISCUSSION

Petitioner raises five grounds for relief in his Amended Petition. In Grounds I(A) through I(D), Petitioner claims that his trial counsel provided ineffective assistance in violation of the Sixth Amendment by: 1) failing to cross-examine SM; 2) failing to object to the hearsay testimony of Detective King; 3) advising Petitioner to waive a jury and his right to testify; and 4) failing to investigate and obtain impeachment evidence. In Ground II, Petitioner claims that his 300-month sentence is disproportionate to his offenses and violates the Eighth Amendment prohibition against cruel and unusual punishment.

In his supporting Brief, however, Petitioner presents no argument to support Grounds I(C) and (D) or Ground II. *See* Pet'r Brief in Support (ECF No. 42); Pet'r Sur-Reply (ECF No. 51).[1] The Court has reviewed the state court record and finds that Petitioner fails to show habeas relief is warranted on Grounds I(C) and (D) or Ground II, and the Petition is denied on those grounds. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (stating that a habeas petitioner bears the burden of proving the asserted grounds for relief); *Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (accord).

---

[1] Petitioner also does not dispute Respondent's argument that Grounds I(C) and (D) are procedurally defaulted and barred from federal review.

**4 - OPINION AND ORDER**

With respect to Grounds I(A) and (B), Respondent argues that the PCR court reasonably rejected these claims and that its decision is entitled to deference.[2]

Pursuant to 28 U.S.C. § 2254(d), this Court may not grant a petition for a writ of habeas corpus filed by a state prisoner with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) and (2).

A state court decision is "contrary to" clearly established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Thus, "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793 (2001).

---

[2] Respondent initially argued that Ground I(B) was untimely; however, this Court deemed the Amended Petition filed as of November 28, 2023, and Respondent withdraws that argument. Resp't Am. Reply (ECF No. 52).

5 - OPINION AND ORDER

Under the well-established Supreme Court precedent of *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner alleging the ineffective assistance of counsel must show that "counsel's performance was deficient" and the "deficient performance prejudiced the defense." 466 U.S. at 687. To establish deficiency and prejudice, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Unless a petitioner "makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Judicial review of an attorney's performance under *Strickland* is "highly deferential" and must afford counsel "wide latitude…in making tactical decisions." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Further, a "doubly deferential" standard applies when "a federal court reviews a state court's *Strickland* determination." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). On federal habeas review, the state court "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101.

In Ground I(A), Petitioner claims that his trial counsel failed to cross-examine SM to highlight the inconsistency of her allegations and show her susceptibility to persuasion. In Ground I(B), Petitioner asserts that trial counsel unreasonably failed to object to Detective King's hearsay testimony about PM's statements and use of the word "violar" when describing Petitioner's abuse of SM. Petitioner argues that no strategic advantage could have been gained

6 - OPINION AND ORDER

by failing to cross-examine the complaining witness or failing to object to inadmissible hearsay.

The PCR court rejected these claims, as follows:

> There is no question that Detective King's testimony regarding [PM]'s statement contained hearsay and at times double hearsay. However, it is evident from the transcript that part of trial counsel's strategy was to show all of the contradictory statements made by SM and [PM] during the investigation and at trial.…It is evident that counsel made a strategic decision to not object to the hearsay from [PM] and in fact to emphasize it…. [Counsel's] outline shows that trial counsel's plan was to highlight that the victim initially said that nothing had happened, that [PM] was the one who used the term "violar" – not the victim, and that the victim was not specific in her initial disclosures to [PM].…Given the facts of this case, the strategy was a reasonable strategy.

> \*\*\*

> Petitioner did not prove that his trial attorney failed to exercise reasonable professional skill and judgment in failing to cross-examine SM. Trial counsel built the defense case around SM's inconsistent statements.… Trial counsel explained to the court that the court would hear upwards of ten different allegations all independent and different from one another as to what exactly SM alleged petitioner did to her, from SM's first statement to [PM], to the allegations police responded to, to the CARES interview, to SM's contemporaneous statements.… On her direct examination, counsel pointed out that SM was "all over the board" and that SM's testimony included "expressions of confusion and lack of understanding."

> \*\*\*

> During closing arguments, trial counsel's main argument was that the victim had been "consistently inconsistent." He played audio of the victim's testimony. He listed all the inconsistencies of SM's disclosures – including the initial 911 call and her denials of touching to her brother, before grand jury, and in her testimony. He argued that SM had said something similar to "I don't know" 15 different times in her disclosures.…When a complaining witness's contradictions are already in the record it is often a better strategy to not confront the witness with the contradiction on cross-examination to avoid giving them an opportunity to explain away the contradictions…. Counsel's trial strategy to not cross-examine SM was a reasonable strategy.

Resp't Ex. 133 at 7-9. Petitioner fails to show that the PCR court unreasonably applied

*Strickland* when denying his claims.

7 - OPINION AND ORDER

As the PCR court found, counsel's chosen strategy emphasized SM's inconsistent statements and suggested that SM had been coached or manipulated. For example, counsel elicited testimony that, during her grand jury testimony, SM initially denied that Petitioner "had ever done anything to her" before being reminded about her CARES interview. Resp't Ex. 103 at 134. Counsel also elicited testimony reflecting that the original call to the police reported that Petitioner touched SM on her "behind," that SM initially told PM "nothing" had happened, and that SM later reported Petitioner had touched her only with his hand. Resp't Ex. 103 at 123, 129-30, 134, 151. During argument, counsel also emphasized the numerous times on direct examination that SM denied knowing or remembering what happened with Petitioner or provided inconsistent answers when asked how Petitioner touched her. Resp't Ex. 103 at 358-60, 393-404, 410-11. Finally, counsel argued that interviewers employed leading questions with SM and suggested that SM was susceptible to their influence and choice of words. Resp't Ex. 103 at 397. Thus, even though Petitioner's counsel did not cross-examine SM, the record reflects that counsel repeatedly highlighted the inconsistencies in SM's statements.

Similarly, counsel's questioning of Detective King was intended to cast doubt on who originally used the word "violar" when reporting Petitioner's conduct. During the cross-examination of Detective King, counsel emphasized that SM's description of Petitioner's abuse was reported to the police through several different people and asked whether it was "unclear who was choosing the words at that point what had happened the night before." Resp't Ex. 103 at 124. Detective King ultimately acknowledged that "the information did come through multiple people." Resp't Ex. 103 at 125. Counsel also questioned whether Detective King had asked PM what the term "violar" meant to him, and Detective King admitted that he had not. Resp't Ex. 103 at 131. Detective King also testified that it only "seemed like" SM had used the word

8 - OPINION AND ORDER

"violar" when talking to PM but he admitted that he was not certain. Resp't Ex. 103 at 131-32. Counsel highlighted the lack of clarity and argued:

> Detective Scott King and Matt Smith acknowledge that they are not aware which witness selected this word. They don't know if this is a word that generated from [SM] or if this is a word that generated from [PM]. Later on, both children, however, indicate that they're not sure or do not have a clear understanding of what rape is, what violar is.

Resp't Ex. 103 at 396; *see also* Resp't Ex. 103 at 402.

As noted by the PCR court, the record also reflects that counsel prepared an outline evincing the intent to elicit testimony from Detectives King and Smith about PM's statements to bolster the defense strategy that SM gave conflicting reports about what happened with Petitioner. Resp't Ex. 131. Finally, counsel objected to other hearsay testimony, *e.g.,* Resp't Ex. 103 at 140, 209, lending support to the PCR court's conclusion that counsel's lack of objection to Detective King's hearsay testimony was intentional and strategic. Counsel's decision was reasonable, given the defense strategy of emphasizing inconsistencies in PM's and SM's reports of the abuse.

In sum, the PCR court reasonably found that counsel's decisions were strategic and were not based on ignorance, a misunderstanding of the law, or lack of preparation. *See Hinton v. Alabama*, 571 U.S. 263, 274 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*"); *see also Williams*, 529 U.S. at 395; *Kimmelman v. Morrison,* 477 U.S. 365, 385 (1986). As such, counsel's strategic choices and the PCR court's decision are entitled to deference by this Court, and Petitioner fails to show that the PCR court unreasonably applied clearly established federal law when rejecting his claims.

**9 - OPINION AND ORDER**

## CONCLUSION

Petitioner is not entitled to habeas relief and the Amended Petition (ECF No. 37) is DENIED. A Certificate of Appealability is DENIED on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 23rd day of January, 2025.

s/ Michael J. McShane
MICHAEL J. MCSHANE
United States District Judge